UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAVARES BROOKS,

                Petitioner,

v.                                   Case No. 2:17-cv-10628
                                   Honorable Denise Page Hood

SHANE JACKSON,

                Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE HABEAS CORPUS PETITION,**
**GRANTING IN PART AND DENYING IN PART**
**A CERTIFICATE OF APPEALABILITY, AND**
**GRANTING LEAVE TO APPEAL _IN FORMA PAUPERIS_**

      Petitioner Tavares Brooks filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state-court convictions for first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226, and three counts of possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner argues as grounds for relief that: (1) he was denied due process and a fair trial by a detective's hearsay testimony; (2) he was denied his constitutional right to effective assistance of counsel by his trial attorney's failure to investigate and present an alibi defense; (3) his right of confrontation was

violated by the admission of the dying victim's statement to his mother that "TJ" shot him; (4) he was convicted on the basis of insufficient evidence in violation of his right to due process; and (5) the prosecution failed to investigate, disclose, and analyze physical evidence.   The State argues in an answer to the habeas petition that Petitioner's first claim is not cognizable on habeas review and that the state court's adjudication of Petitioner's other claims was not objectively unreasonable.   Having reviewed the pleadings and record, the Court agrees that Petitioner's claims do not warrant habeas relief.

## I.  BACKGROUND

The charges against Petitioner arose from the fatal shooting of Dion Jacobs in Saginaw, Michigan about 8:00 p.m. on October 11, 2012.   Petitioner was tried before a jury in Saginaw County Circuit Court.   The evidence at trial established that Jacobs was shot

> six times with a 9 mm semiautomatic pistol, killing him, after Jacobs and Aaron Johnson stole $2,000 to $3,000 worth of marijuana from defendant.   Right after he was shot, Jacobs collapsed onto the kitchen steps of his mother's home.   She testified that when he was asked who shot him, he replied "TJ."   While subsequently being treated by emergency personnel, Jacobs was pronounced dead.   Johnson testified that Jacobs always referred to defendant as "TJ."

*People v. Brooks*, No. 318995, 2015 WL 1314407, at *1 (Mich. Ct. App. Mar. 24, 2015).

On September 3, 2013, the jury found Petitioner guilty, as charged, of first-degree, premeditated murder, felon in possession of a firearm, carrying a dangerous weapon with unlawful intent, and three counts of felony-firearm.   On October 14, 2013, the trial court sentenced Petitioner to two years in prison for the three felony-firearm convictions, followed by life imprisonment for the murder conviction and concurrent sentences of five to ten years in prison for the felon-in-possession and carrying-a-dangerous-weapon convictions.

Petitioner raised his habeas claims in an appeal of right.  The Michigan Court of Appeals affirmed his convictions, *see id.*, and on November 24, 2015, the Michigan Supreme Court denied leave to appeal.  *See People v. Brooks*, 498 Mich. 921; 871 N.W.2d 181 (2015).

In 2015, Petitioner filed a federal habeas corpus petition, which this Court dismissed without prejudice so that Petitioner could pursue post-conviction remedies in state court.  *See Brooks v. Haas*, No. 2:15-cv-14470 (E.D. Mich. July 29, 2016). Petitioner apparently did not pursue additional state remedies after the Court dismissed his first petition.  On February 27, 2017, he returned to federal court and commenced this action.  The case was randomly assigned to another judge in this District, but later reassigned to this Court as a companion to Petitioner's previous case.  The State filed an answer to the petition, and Petitioner filed a reply.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal habeas petitioners who challenge

> a matter "adjudicated on the merits in State court" to show that the relevant state court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Deciding whether a state court's decision "involved" an unreasonable application of federal law or "was based on" an unreasonable determination of fact requires the federal habeas court to "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims," *Hittson v. Chatman,* 576 U.S. ——, ——, 135 S .Ct. 2126, 2126, 192 L.Ed.2d 887 (2015) (GINSBURG, J., concurring in denial of certiorari), and to give appropriate deference to that decision, *Harrington v. Richter,* 562 U.S. 86, 101–102, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011).

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id*. at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. A state-court's factual determinations are presumed correct on federal habeas review unless the petitioner rebuts this presumption with clear and convincing evidence, 28 U.S.C. § 2254(e)(2); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), and habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  DISCUSSION

### A.  Djuana Gilmore's Statement to a Police Officer

Petitioner alleges that he was denied due process and a fair trial by retired detective Joseph Grigg's testimony about Djuana Gilmore's comments to Grigg

during Grigg's investigation of the case.  The prosecutor attempted to elicit the disputed testimony on re-direct examination of Griggs because defense counsel had asked Grigg on cross-examination about his investigation of the case.  Defense counsel objected on the basis that the testimony would be hearsay.  The trial court overruled the objection because defense counsel had opened the door to the testimony during his cross-examination of Grigg.  Grigg was then permitted to testify that Gilmore had informed him that she rode with Jacobs to a neighborhood store on the night of the robbery, that Petitioner and Aaron Johnson subsequently left that location, and that Jacobs then got in Johnson's car and followed Petitioner and Johnson to where they were going.  *See* 8/29/13 Trial Tr. at 94-97, ECF No. 7-9, PageID. 404-405.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits during the direct appeal, and it agreed with the trial court's ruling that Petitioner had opened the door to testimony about Gilmore's comments to Detective Grigg.  The Court of Appeals opined that Grigg's testimony on re-direct examination by the prosecutor was directly responsive to defense counsel's questions on cross-examination.

The Court of Appeals also concluded that the admission of Gilmore's comments to Detective Grigg did not violate Petitioner's rights under the Confrontation Clause.  The Court of Appeals stated that Gilmore's statement was

properly admitted to bolster or attack credibility and to rebut defense counsel's implication that Johnson was lying about the robbery and his previous relationship with Petitioner.

Petitioner argues that Gilmore's statement to Detective Grigg was inadmissible hearsay for which there was no exception. Petitioner also maintains that the state courts' conclusion -- that he opened the door to the testimony -- was an unreasonable determination of the facts, because defense counsel had questioned Grigg about his interview with the victim's mother (Dionna Leonard), not Ms. Gilmore. Finally, Petitioner contends that Detective Grigg's hearsay testimony violated his right of confrontation and rendered his trial fundamentally unfair.

### 1.  Clearly Established Federal Law

Petitioner's contention that Officer Grigg's hearsay testimony was inadmissible under state law lacks merit because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "To the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review." *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). A claim that evidence was improperly admitted is not part of a federal court's review of a state conviction because, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Petitioner's contention that the state courts made an unreasonable determination of the facts when they concluded that he opened the door to the hearsay testimony also lacks merit. Defense counsel asked Detective Grigg on cross-examination whether Gilmore knew Petitioner before the shooting. *See* 8/29/13 Trial Tr. at 91-93, ECF No. 7-9, PageID. 403-404. This question opened the door to the prosecutor's questions about Detective Grigg's investigation and what Gilmore had told him about Petitioner, Jacobs, and Johnson. The state courts did not make an unreasonable determination of the facts when they reached the same conclusion.

Petitioner's final argument is that Detective Grigg's testimony violated his right of confrontation. This is a cognizable issue on habeas review, because the Sixth Amendment guarantees the accused in criminal cases "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The right is "applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it bars "admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004)).

8

A statement to the police during an interrogation is considered testimonial if there is no ongoing emergency and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822.

### 2. Application

Gilmore's remarks to Detective Grigg were testimonial because they were made during Grigg's investigation of Jacobs' murder, there was no ongoing emergency, and Gilmore could have anticipated that her statements would be used during the criminal prosecution of Petitioner. Although Gilmore was listed as a trial witness, she moved to Chicago, and shortly before the trial commenced, she decided not to attend the trial due to health issues related to her pregnancy. *See* 8/28/13 Trial Tr. at 3-15, ECF No. 7-7, PageID. 317-320. Petitioner, nevertheless, had a prior opportunity to cross-examine Gilmore at his preliminary examination. *See* 2/12/13 Prelim. Examination Tr., ECF No. 7-3, PageID. 175-178. Under *Crawford* and *Davis*, Gilmore's testimonial statements to Detective Grigg were admissible at trial because she was unavailable at trial and because Petitioner had a prior opportunity to cross-examine her.

Petitioner maintains that he lacked a prior opportunity to cross-examine Ms. Gilmore at his preliminary examination because her interview with Detective Grigg was not addressed at the examination. "[T]here is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-

examination for Confrontation Clause purposes." *Al–Timimi v. Jackson,* 379 F. App'x, 435, 437 (6th Cir. 2010) (citing *Vasquez v. Jones,* 496 F.3d 564, 577 (6th Cir. 2007). But "[i]f there is room for reasonable debate on the issue, the state court's decision to align itself with one side of the argument is necessarily beyond this court's power to remedy under § 2254, even if it turns out to be wrong." *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *White v. Woodall*, 572 U.S. 415 (2014)). "*Crawford* does not mandate that the cross-examination be effective or skillfully performed," and the quality of Petitioner's cross-examination of Gilmore at the preliminary examination is not implicated by *Crawford* so long as his opportunity to cross-examine her was adequate. *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 853 (E.D. Mich. 2010) (citing *Glenn v. Dallman*, 635 F. 2d 1183, 1187 (6th Cir. 1980)).

Petitioner's trial attorney had an opportunity to cross-examine Gilmore at his preliminary examination, and he took advantage of that opportunity to question her. Although the degree of cross-examination may have been limited in scope, the opportunity to cross-examine Gilmore existed even if defense counsel did not fully cross-examine her. The Court therefore concludes that Petitioner's right of confrontation was not violated by Detective Grigg's testimony about Gilmore's comments to him, and the state court's rejection of Petitioner's claim was not objectively unreasonable.

Petitioner's constitutional claim lacks merit for an additional reason: "The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," *Crawford*, 541 U.S. at 59 n.9, and the Michigan Court of Appeals determined that the prosecution used Gilmore's comment for impeachment purposes.  The Court of Appeals noted that:

> the prosecution premised much of its case on Johnson's testimony that he and Jacobs stole marijuana from defendant, and thus provided defendant with the motive to kill Jacobs. On cross-examination, defense counsel challenged whether Gilmore knew defendant prior to the shooting, to attack Johnson's testimony that he and Jacobs had known defendant for years, and that Jacobs helped carry out the robbery.  In response, the prosecution elicited information regarding Gilmore's comment that she, Johnson and Jacobs were all present immediately prior to the robbery. The prosecution did not ask this question to prove that Gilmore was present prior to the robbery but to rebut the implication that Johnson was lying about the robbery and his previous relationship with defendant. . . .  [T]he prosecution offered Gilmore's statement for the purpose of bolstering or attacking credibility.

*Brooks*, 2015 WL 1314407, at *6.

Because Gilmore's statement to Detective Gilmore was admitted for the non-hearsay purpose of bolstering Johnson's testimony and rebutting Petitioner's defense, it raises no Confrontation Clause concerns.  *See Adams v. Holland*, 168 F. App'x 17, 20 (6th Cir. 2005).  Petitioner is not entitled to relief on his claim.

## B.  Trial Counsel

Petitioner alleges next that his trial attorney was ineffective for failing to investigate and present an alibi defense.  Petitioner asserts that his attorney should have produced his sister, Karla Brooks, and his girlfriend, Demita Burnett, as witnesses because both women could have testified that he and Ms. Burnett were at Ms. Brooks' home at the time of the murder.  Petitioner alleges that he informed his trial attorney of these facts, but his attorney totally disregarded the potentially favorable evidence.  Petitioner further alleges that the state appellate court's rejection of his claim was contrary to *Strickland* and was based on an unreasonable determination of the facts.

### 1.  Clearly Established Federal Law

To prevail on his claim, Petitioner must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*.  "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.

A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted).

Petitioner's claim is that his trial attorney failed to investigate and present an alibi defense. Attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

"[T]he failure to call a known alibi witness generally would constitute ineffective assistance of counsel." *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). "But *Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Pinholster*, 563 U.S. at 196 (quoting *Strickland*, 466 U.S. at 689-90); *see also Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (noting that, under *Strickland*, the court was required to "presume that decisions of what evidence to present and whether to call or question witnesses

13

are matters of trial strategy") (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).

## 2. Application

### a. Demita Burnett

Both Ms. Brooks and Ms. Burnett initially were listed as witnesses in the case. *See* 8/27/13 Trial Tr. at 14, ECF No. 7-5, PageID. 261.[1] The record indicates that defense counsel wanted to produce Ms. Burnett as a defense witness to show that Aaron Johnson had talked to Burnett about trying to help the person who killed Jacobs. Because Johnson had already testified at trial that he would not do anything to help Jacobs' killer, defense counsel maintained that Burnett's testimony would show that Johnson had made prior inconsistent statements. The prosecutor objected because defense counsel had not laid a proper foundation as to what Johnson may have said to Burnett. Defense counsel then agreed to call Johnson as a witness to establish a foundation for Burnett's anticipated testimony. *See* 8/29/13 Trial Tr. at 101-104, ECF No. 7-9, PageID 406-407.

Defense counsel called Johnson as a witness and elicited Johnson's testimony about his contacts with Burnett. *See id*. at 117-121, ECF No. 410-411. But when

---

[1] The court reporter typed "Cara (phonetic) Brooks" in the transcript of trial, but because Petitioner claims that defense counsel should have called his sister Karla, and because "Cara" sounds much like "Karla," the Court believes the potential witness was Petitioner's sister, Karla Brooks.

defense counsel subsequently attempted to call Ms. Burnett as a witness, the prosecutor objected once again.  *See id*. at 126, PageID. 412.   A bench conference followed, and defense counsel then rested his case without producing Ms. Burnett. *Id.*

It is not clear from the record why defense counsel did not use Burnett to establish an alibi defense in addition to, or instead of, trying to use her to show an inconsistency in Johnson's testimony.  One reason for not using Burnett as an alibi witness may be that Petitioner did not testify in his own defense to establish an alibi. In any event, "the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.' "  *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland,* 466 U.S. at 689).

Petitioner, moreover, has not presented an affidavit from Burnett establishing what she would have said if she had testified.   Without any evidence that Burnett would have offered specific favorable testimony to support an alibi defense, Petitioner cannot show that he was prejudiced by his trial attorney's failure to produce Burnett.  *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005).

### b.  Karla Brooks

Petitioner did attach his sister Karla's affidavit to his habeas petition.  She implies in her affidavit that Petitioner and Burnett were present when she arrived

home at 7:30 p.m. on the night of the murder.  She goes on to say that Petitioner and

Burnett left her home at 9:00 p.m. that night.   She also states in the affidavit that

> "[i]t was discussed with defence attorney . . . that I was to be called upon as a witness.  I was present throughout the trial proceedings with the intent to testify.

Pet., ECF No. 1, PageID. 47.

Defense counsel initially placed Ms. Brooks on his witness list and then

withdrew her name on the first day of trial.  *See* 8/27/13 Trial Tr. at 4-6, ECF No. 7-

5, PageID. 259.  Defense counsel did not provide a reason for his decision, but if he

knew what Ms. Brooks would say at trial and whether or not she would be a credible

witness, the Court may presume "that counsel's decision to omit [her] testimony was

trial strategy."  *Cathron*, 77 F. App'x at 841-42.  It is also reasonable to assume that

the jury would have found Ms. Brooks' credibility questionable due to her close

relationship with Petitioner and because she had a personal stake in exonerating

Petitioner.  *Yancey v. Haas*, 742 F. App'x 980, 984 (6th Cir. 2018) (citing *Ballinger*

*v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013), and *McCray v. Vasbinder*, 499 F.3d

568, 573 (6th Cir. 2007)).  Petitioner has failed to show that counsel's decision not

to produce Ms. Brooks as a witness constituted ineffective assistance.

### c.  Defense Counsel's Alternative Approach

Despite defense counsel's failure to call alibi witnesses, he vigorously

advocated the theory that Petitioner was not the shooter by

> using cross-examination to undermine the prosecution's case. Defense counsel stringently cross-examined Johnson, drastically impeaching his credibility. Defense counsel highlighted numerous inconsistencies in Johnson's testimony and managed to elicit statements from Johnson admitting that he had lied to police about possessing a firearm. Similarly, defense counsel elicited an acknowledgment that police found no physical evidence linking defendant to the crime scene, and that police failed to investigate several questionable aspects of Johnson's testimony.

*Brooks*, 2015 WL 1314407, at *9.

The Court of Appeals concluded that, "[b]ecause defense counsel adequately presented the defense that police misidentified defendant as the shooter, defendant was not deprived of this defense by counsel's decision not to call his alibi witnesses." *Id*. This Court agrees. Although alibi witnesses may have facilitated Petitioner's efforts to undermine the state's case, there are

> "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Rare are the situations in which the "wide latitude counsel must have in making tactical decisions" will be limited to any one technique or approach.

*Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689). "To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Id*. at 109.

Petitioner's trial attorney attempted to show that the prosecution had not met its burden of proof in part because Aaron Johnson was not a credible witness and

because Dion Jacobs may not have been referring to Petitioner when he informed his mother that "TJ" shot him.   Because this was a reasonable trial strategy, Petitioner has failed to show that defense counsel was ineffective.

The state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland* or *Richter*.   And given the deference due to the state court's decision under both *Strickland* and AEDPA, the Court concludes that Petitioner is not entitled to relief on his claim.

## C.  The Victim's Identifying Statement to His Mother

Petitioner contends that Jacobs' statement to his mother that "TJ" shot him, *see* 8/28/13 Trial Tr. at 130-132, ECF No. 7-7, PageID. 348-349, violated his right of confrontation because he was unable to cross-examine Jacobs.   The Michigan Court of Appeals opined on review of this claim that Jacobs' statement was hearsay, but that the hearsay was admissible under an exception to the hearsay rule for dying declarations.   The Court of Appeals also concluded that Jacobs' statement did not violate Petitioner's right of confrontation.

The only question here is whether Petitioner's right of confrontation was violated, because any violation of the Michigan Rules of Evidence on hearsay would not be a basis for habeas corpus relief. *McGuire*, 502 U.S. at 67-68; *Hall*, 563 F.3d at 239.   Petitioner's constitutional claim lacks merit, however, because only testimonial statements cause a declarant to be a witness within the meaning of the

Confrontation Clause, *Davis*, 547 U.S. at 821, and a witness's statement to a relative or acquaintance is not a testimonial statement.  *See Crawford*, 541 U.S. at 51 (stating that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not"); *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) (noting that "statements made to friends and acquaintances are non-testimonial"); *United States v Lee*, 374 F.3d 637, 645 (8th Cir. 2004) (concluding that the declarant's statement to his mother did "not implicate the core concerns of the confrontation clause").  The Supreme Court, moreover,

> has refrained from ruling on the status of dying declarations under the Confrontation Clause.  In *Crawford* and again in *Giles v. California,* 554 U.S. 353, 128 S. Ct. 2678, 171 L.Ed.2d 488 (2008), the Supreme Court hinted that dying declarations may fall within an exception to the constitutional bar against testimonial hearsay.  *See Crawford,* 541 U.S. at 56 n. 6, 124 S. Ct. 1354 ("Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are . . . .  We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations."); *Giles,* 554 U.S. at 358, 128 S. Ct. 2678 (recognizing dying declarations as one of "two forms of testimonial statements ... admitted at common law even though they were unconfronted").

*Walker v. Harry*, 462 F. App'x 543, 545–46 (6th Cir. 2012).  The state appellate court's rejection of Petitioner's claim, therefore, does not offend clearly established Supreme Court precedent, *see id.* at 546, and Petitioner is not entitled to relief on his claim.

## D.  Sufficiency of the Evidence

Petitioner claims that he was convicted on insufficient evidence in violation of his right to due process.  Petitioner contends that there was insufficient evidence that he committed and premeditated the murder.  To support this contention, Petitioner alleges that dying declarations, such as Jacobs' comment to his mother that "TJ" shot him, are unreliable, and that Aaron Johnson's testimony was not credible because of the many discrepancies in his testimony.  The Michigan Court of Appeals disagreed with Petitioner's argument and concluded that the facts were more than sufficient to establish Petitioner's guilt.

### 1.  Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the

> responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).   "Circumstantial evidence may support a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt."  *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006) (internal and end citations omitted).

Under AEDPA, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference."  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).  First, it is the jury's responsibility to decide what conclusions should be drawn from evidence admitted at trial.  *Johnson*, 566 U.S. at 651.  And second, a federal habeas court may overturn a state court decision rejecting a sufficiency of the evidence challenge only if the state court decision was objectively unreasonable.  *Id.*; *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, 138 S. Ct. 1283 (2018).

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443

U.S. at 324 n. 16. "To establish first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and [that] the act of killing was deliberate and premeditated." *People v. Haywood*, 209 Mich. App. 217, 229; 530 N.W.2d 497, 503 (1995).

> "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Plummer,* 229 Mich. App. 293, 300, 581 N.W.2d 753 (1998) (quotation marks and citation omitted). "Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *Id.* at 301, 581 N.W.2d 753. "Though not exclusive, factors that may be considered to establish premeditation include the following: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *Id.* at 300, 581 N.W.2d 753.

*People v. Bass*, 317 Mich. App. 241, 266; 893 N.W.2d 140, 157 (2016).

## 2. Application

Petitioner asserts that there was insufficient evidence pointing to him as the perpetrator of the murder. "The identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich. App. 646; 181 N.W.2d 655, 656 (1970)). But "[i]f the evidence at trial was sufficient to permit jurors to find beyond a reasonable doubt that the man seated at the defense table was the same person referred to in the account of the

offense, then there is no reason to overturn the jury's conviction based on the government's alleged failure to prove identity." *United States v. Thomas*, 763 F.3d 689, 694 (7th Cir. 2014).

The Michigan Court of Appeals correctly pointed out on review of Petitioner's claim that,

> immediately after being shot Jacobs identified the perpetrator as "TJ." The medical examiner established that Jacobs was shot in the front of his body, indicating that he was in a position to positively identify his assailant. Furthermore, because Jacobs was fatally wounded and actively dying, he had no reason to lie about defendant's identity. Similarly, considering that Jacobs' mother testified that she had never met anyone named "TJ," it was reasonable for the jury to conclude that she was being truthful about Jacobs' last words; Jacobs' dying declaration was credible, direct evidence that "TJ" was the shooter.

> In addition, the prosecution presented sufficient circumstantial evidence to establish that defendant was the "TJ" Jacobs identified. Johnson testified that he, Jacobs, and defendant had known each other for 18 years, and that he and Jacobs had always referred to defendant as TJ.  He testified that he stole roughly $2,000 of marijuana from defendant, and Jacobs helped him do so, which would explain defendant's motive for killing Jacobs.  "In cases in which the proofs are circumstantial, evidence of motive is particularly relevant."  *People v. Unger*, 278 Mich. App 210, 223; 749 NW2d 272 (2008).

*Brooks*, 2015 WL 1314407, at *1-*2.

Although Petitioner contends that there was a lack of evidence connecting him to the robbery and murder, the Michigan Court of Appeals noted that

> the evidence established that Jacobs and Johnson were good friends, that defendant had known Jacobs and Johnson for many years, and that all three men lived in the same area.  It was reasonable for the jury to

> infer that defendant could have easily discovered that Jacobs helped
> Johnson commit the robbery.

*Id*. at *2.

A rational juror could have concluded from the evidence, as accurately summarized by the Court of Appeals, that Petitioner shot Jacobs. A rational juror also could have concluded from the use of a gun and the firing of ten gunshots, including one to Jacobs' chest, that the murder was premeditated.

Petitioner's argument is primarily an attack on Johnson's credibility, but

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S. Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir. 2003). Further, as the Michigan Court of Appeals pointed out,

> when considered in conjunction with the prosecution's corroborating evidence, [Johnson] was not so impeached as to warrant wholesale disbelief of his testimony. Items generally associated with drug dealing were found at defendant's apartment, including a box for a digital scale, plastic baggies, $6,000 in cash rolls, and a handwritten ledger. In addition, the prosecution introduced a receipt, supporting Johnson's assertion that he had sent his baby's mother to a motel on the night of the robbery after defendant came to his house and pounded on the door. Finally, Jacobs' girlfriend, Djuana Gilmore, had said she was present when Jacobs and Johnson discussed a plan to take TJ's property.

24

*Brooks*, 2015 WL 1314407, at *2.

The state appellate court's determination of the facts is supported by the record, and its conclusion -- that the prosecution presented sufficient, credible evidence to establish that Petitioner murdered Jacobs -- is not contrary to, or an unreasonable application of, *Jackson*.  Petitioner has no right to relief on his challenge to the sufficiency of the evidence.

**E.  The Alleged Failure to Investigate, Disclose, and Analyze Evidence**

In his fifth and final claim, Petitioner alleges that the prosecution failed to investigate, disclose, and analyze physical evidence.  Petitioner contends that the prosecutor had a duty to inquire about, and discover, information regarding:  the Instagram postings made by "Stack-A-Grip," which was one of Petitioner's nicknames, *see* 8/28/13 Trial Tr. at 71, 76, 103-104, ECF No. 7-7, PageID.  334, 335, 342; whether Johnson was admitted to the hospital and had surgery at the time of the incidents in question, as he claimed at trial, *see id*. at 72-74, PageID. 334; and whether Johnson's brain tumor was the reason for inconsistencies in his testimony, as the prosecutor claimed in his rebuttal argument, *see* 8/30/13 Trial Tr. at 49-50, ECF No. 7-11, PageID. 456.

Petitioner relies on *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. A true B*rady* claim has three components:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Even if the evidence at issue would have been favorable to the defense, Petitioner has failed to show that the prosecution suppressed the evidence. Johnson testified at the preliminary examination about his hospitalization and about "Stack-a-Grip" being Petitioner's signature or street name. *See* 2/12/13 Prelim. Examination Tr. at 56, 65-68, ECF No. 7-3, PageID. 199, 208-211. Because Petitioner should have known the essential facts permitting him to take advantage of any exculpatory information about Johnson's hospitalization or Johnson's belief that Petitioner was known as "Stack-a-Grip," there was no *Brady* violation. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

Further, the essence of Petitioner's claim is that the prosecution's investigation was inadequate. The Due Process Clause of the Fourteenth Amendment does not require the police to use a particular investigatory tool. *Arizona v. Youngblood*, 488 U.S. 51, 58-59 (1988). Nor does the prosecution have

a constitutional duty to discover evidence that might conceivably aid the defense in the preparation of its case. *Williams v. Wolff*, 473 F.2d 1049, 1054 (8th Cir. 1973).

Defense counsel, moreover, used the absence of certain evidence as part of the defense by suggesting that the police investigation had been inadequate and that the prosecution had failed to prove its case. *See, e.g.,* 8/29/13 Trial Tr. at 37, ECF No. 7-9, PageID. 390 (defense counsel's cross-examination of Detective Allen Rabideau as to whether casings found at the crime scene were subjected to fingerprint or DNA analysis); *id*. at 84-91, PageID. 402-403 (defense counsel's cross-examination of Detective Grigg regarding the lack of physical evidence linking Petitioner to the crime and Grigg's failure to investigate the posting made by "Stack-a-Grip" on Johnson's Instagram account). As a result, no prejudice ensued from the alleged suppression of evidence.

The Michigan Court of Appeals concluded on review of Petitioner's claim that he had failed to establish a *Brady* violation. This conclusion was objectively reasonable, and Petitioner has no right to habeas relief on his claim.

## IV. CONCLUSION

The state appellate court's rejection of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The state court's decision also was not so lacking in justification that there was an error beyond any possibility for

fairminded disagreement.  The Court, therefore, denies the petition for writ of habeas corpus.

The Court nevertheless grants a certificate of appealability on Petitioner's fourth claim regarding the sufficiency of the evidence, because reasonable jurists could disagree with the Court's resolution of that claim or conclude that the issue deserves encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The Court declines to issue a certificate of appealability on Petitioner's remaining claims.  Petitioner may proceed *in forma pauperis* on appeal if he appeals this decision because an appeal could be taken in good faith.  28 U.S.C. §1915(a)(3).


s/Denise Page Hood
Dated:  April 17, 2020                    Chief Judge, United States District Court